## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

DeANGELO AVERY DOBBS,

      **Plaintiff,**

      **v.**                      **CASE NO.  22-3163-JWL-JPO**

JESSE NOLL, et al.,

      **Defendants.**

## MEMORANDUM AND ORDER

This matter is a pro se civil rights action.  Plaintiff is confined at the Atchison County Jail ("ACJ") in Atchison, Kansas, and he proceeds *in forma pauperis*.  By order dated September 14, 2022 (Doc. 5; "MOSC"), the Court directed Plaintiff to show cause why his Complaint should not be dismissed for the reasons set forth in the order or to file an amended complaint curing the deficiencies.  In response to the MOSC, Plaintiff filed an Amended Complaint (Doc. 6; "AC").  Plaintiff's Amended Complaint is now before the Court for screening.  The Court's screening standards are set forth in detail in the MOSC.

Plaintiff brings two counts in the AC.  Both stem from an incident that occurred on March 27, 2020.  Plaintiff states that at 7:00 p.m. lockdown, the Atchison Police Department was called to provide assistance in the ACJ because several detainees, including Plaintiff, were refusing to return to their cells.  Five detainees were sitting on tables with their legs crossed in a noncombative position.  The detainees wanted to talk to Captain Travis Wright about new detainees being placed in the pod without being screened or tested for Covid, about their food portions at meals, and about not having adequate cleaning supplies.  When Corrections Officer ("CO") Jesse Noll entered the pod with police officers, the detainees again refused to return to their cells and lockdown.  The

1

officers then began spraying the inmates with pepper spray.  Plaintiff backed away, saying all they wanted was to talk with Wright, and Noll sprayed Plaintiff directly in his eyes several times while ordering him to go down to the floor.  Plaintiff dropped to his knees, and Noll put him in a headlock with his knee in Plaintiff's back, slamming him to the ground.  Plaintiff was dragged to his cell. He went to his sink to wash the spray out of his eyes but discovered his water had been turned off. He pressed the emergency call button to report the water issue and was told by CO Derrick Wilburn that Wright had ordered them to cut the water to the cells.  Plaintiff banged on his door, asking for Noll.  When Noll arrived, Plaintiff asked that his water be turned on because his eyes were burning badly.  Noll refused to turn on the water and refused to let Plaintiff shower.  He told Plaintiff he "wasn't doing anything for me because I disobeyed him and if I wanted to get the pepper spray out I should use my toilet."  (Doc. 6, at 5).

The water was shut off for the next two days.  Defendant Wright made rounds three days after the incident, and Plaintiff asked him why they were sprayed and being treated cruelly.  Wright responded that "this is my jail and you all disobeyed me so this is what you get."  (*Id*.).  He also refused to let Plaintiff clean the premises to remove residual pepper spray, saying "we were lucky he let us take showers the day after the incident and to be happy with that."  (*Id*.).  Plaintiff was locked down for 25 days and was never allowed to be examined by a nurse.  Plaintiff alleges that he has permanent blurry spots in his field of vision and needs prescription glasses as a result of being sprayed.

In Count I, Plaintiff alleges Defendant Jesse Noll violated his Eighth Amendment right to be free from cruel and unusual punishment when he sprayed Plaintiff in the face with pepper spray. Plaintiff claims Noll used excessive force.

In Count II, Plaintiff alleges Defendant Travis Wright, Captain at ACJ, violated his Eighth Amendment rights by ordering that the water to Plaintiff's cell be cut off and refusing to allow him to shower or receive medical attention after being sprayed in the face with pepper spray.

Plaintiff seeks compensatory damages of $100,000 total and punitive damages of $500,000 from each defendant.

"Excessive force claims are cognizable under the Fourth, Fifth, Eighth, and Fourteenth Amendment, depending on where in the criminal justice system the plaintiff is at the time of the challenged use of force." *Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1169 (10th Cir. 2021) (citation omitted).  Claims of mistreatment while in state pretrial confinement are not covered by the Fourth Amendment or the Eighth Amendment.  *Colbruno v. Kessler*, 928 F.3d 1155, 1162 (10th Cir. 2019).  They are assessed under the Fourteenth Amendment.  *Id.*

The Supreme Court held in *Kingsley* that "the appropriate standard for a pretrial detainee's excessive[-]force claim is solely an objective one" and that therefore "a pretrial detainee can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose."  *Brown v. Flowers*, 974 F.3d 1178, 1182 (10th Cir. 2020) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 135 S. Ct. 2466, 2473–74, 192 L. Ed. 2d 416 (2015); *see also Colbruno*, 928 F.3d at 1163 ("[T]here is no subjective element of an excessive-force claim brought by a pretrial detainee.").  Because Plaintiff was a pretrial detainee, the ultimate question is whether the use of pepper spray and subsequent events amounted to punishment.  *See Kingsley*, 135 S. Ct. at 2473.

There are three general areas in which courts have held that use of pepper spray or other chemical agents may constitute excessive force in violation of the Constitution.  First, an Eighth Amendment violation has been found when an officer used far more than a reasonable quantity of a chemical agent.  *See, e.g., Furnace v. Sullivan,* 705 F.3d 1021, 1025 (9th Cir. 2013) (finding Eighth Amendment violation where officer discharged can of pepper spray until empty, and other officer also joined in); *Lawrence v. Bowersox,* 297 F.3d 727, 732 (8th Cir. 2002) (same, where prisoner's entire cell was doused in pepper spray using fire-extinguisher-like device); *DeSpain v. Uphoff,* 264 F.3d 965, 978 (10th Cir. 2001) (same, where officer indiscriminately sprayed entire prison tier).

Second, constitutional violations have also been found when a chemical agent was used without a prior verbal command or warning, after a prisoner had been subdued, or after a prisoner had become compliant.  *See Tedder v. Johnson,* 527 F. App'x 269 (4th Cir. 2013) (stating that pepper spray employed on visibly sick inmate may constitute excessive force); *Johnson v. Blaukat,* 453 F.3d 1108 (8th Cir. 2006) (finding triable Eighth Amendment claim where officers allegedly used pepper spray as a first resort without prior verbal command); *Treats v. Morgan,* 308 F.3d 868, 872 (8th Cir. 2002) (finding triable Eighth Amendment claim where there was evidence that inmate "did not intentionally disobey [officer], use profanity or abusive language, or threaten any correctional officer, and ... was [pepper] sprayed without warning").

Finally, and most relevant to Plaintiff's allegations, courts have concluded that the Constitution can be violated when, after a prisoner is pepper sprayed (even for a legitimate reason), officers then do not allow the prisoner to wash off the spray or withhold appropriate medical attention.  *See, e.g., Norton v. City of Marietta,* 432 F.3d 1145, 1153–54 (10th Cir. 2005) (finding triable Eighth Amendment claim where officer pepper sprayed inmate's eyes for 5–7 seconds from

two inches away, as if "'he was spray-painting [plaintiff's] face,'" and then ignored inmate's pleas for assistance, other than "toss[ing] some water in his eyes"); *Walker v. Bowersox,* 526 F.3d 1186, 1189 (8th Cir. 2008) (finding prisoner stated claim for Eighth Amendment violation where prisoner was barred from showering or changing for three days after pepper spray incident); *Foulk v. Charrier,* 262 F.3d 687 (8th Cir. 2001) (affirming Eighth Amendment verdict against officer where, after officer "sprayed pepper spray directly into [inmate's] face," inmate "received no medical care and had no ability to wash off the pepper spray, [and] continued to feel its painful effects for several days").

The Court finds that the proper processing of Plaintiff's claims cannot be achieved without additional information from appropriate officials of the ACJ. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991). Accordingly, the Court orders the appropriate officials to prepare and file a *Martinez* Report. Once the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915A.

**IT IS THEREFORE ORDERED THAT**:

(1) Officials responsible for the operation of the ACJ are directed to undertake a review of the subject matter of the Complaint:

a.      To ascertain the facts and circumstances;

b.      To consider whether any action can and should be taken by the institution to resolve the subject matter of the Complaint; and

c.      To determine whether other like complaints, whether pending in this Court or elsewhere, are related to the Complaint and should be considered together.

(2) Upon completion of the review, a written report shall be compiled which shall be filed with the Court by **November 28, 2022,** and served on Plaintiff. The ACJ officials must seek leave

of the Court in order to file certain exhibits or portions of the report under seal or without service on Plaintiff.  Statements of all witnesses shall be in affidavit form.  Copies of pertinent rules, regulations, official documents, and, wherever appropriate, the reports of medical or psychiatric examinations shall be included in the written report.  Any recordings related to Plaintiff's claims shall also be included.

(3)  Authorization is granted to the officials of the ACJ to interview all witnesses having knowledge of the facts, including Plaintiff.

(4)  No answer or motion addressed to the Complaint shall be filed until the *Martinez* Report required herein has been prepared.

(5)  Discovery by Plaintiff shall not commence until Plaintiff has received and reviewed Defendants' answer or response to the Complaint and the report ordered herein.  This action is exempted from the requirements imposed under Fed. R. Civ. P. 26(a) and 26(f).

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter the Atchison County Sheriff as an interested party on the docket for the limited purpose of preparing the *Martinez* Report ordered herein.  Upon the filing of that report, the Sheriff may move for termination from this action as interested party.

Copies of this order shall be transmitted to Plaintiff, to the Atchison County Sheriff, and to the Atchison County Attorney.

**IT IS SO ORDERED**.

**Dated October 24, 2022, in Kansas City, Kansas.**


**S/ John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**