## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

DeANGELO AVERY DOBBS,

    Plaintiff,

    v.                            CASE NO.  22-3163-JWL-JPO

JESSE NOLL, et al.,

    Defendants.

## MEMORANDUM AND ORDER
## TO SHOW CAUSE

Plaintiff brings this pro se action under 42 U.S.C. § 1983.  The Court granted Plaintiff leave to proceed in forma pauperis.  Plaintiff is confined at the Atchison County Jail ("ACJ") in Atchison, Kansas.  On September 14, 2022, the Court entered a Memorandum and Order and Order to Show Cause (Doc. 5) ("MOSC") granting Plaintiff an opportunity to show cause why his Complaint should not be dismissed or to file an amended complaint to cure the deficiencies set forth in the MOSC.  The Court reviewed Plaintiff's Amended Complaint (Doc. 6) and entered a Memorandum and Order (Doc. 7) ("M&O") directing the officials responsible for the operation of the ACJ to prepare a *Martinez* Report.  The M&O provides that "[o]nce the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915A." (Doc. 7, at 2.)  The *Martinez* Report (Doc. 10) (the "Report") has now been filed, and the Court will screen the Amended Complaint in light of the Report.  The Court's screening standards are set forth in the MOSC.

## I.  Nature of the Matter Before the Court

Plaintiff brings two counts in the Amended Complaint.  Both stem from an incident that occurred on March 27, 2020.  Plaintiff states that at 7:00 p.m. lockdown, the Atchison Police

Department was called to provide assistance in the ACJ because several detainees, including Plaintiff, were refusing to return to their cells. Five detainees were sitting on tables with their legs crossed in a noncombative position. The detainees wanted to talk to Captain Travis Wright about new detainees being placed in the pod without being screened or tested for Covid, about their food portions at meals, and about not having adequate cleaning supplies. When Corrections Officer ("CO") Jesse Noll entered the pod with police officers, the detainees again refused to return to their cells and lockdown. The officers then began spraying the inmates with pepper spray. Plaintiff backed away, saying all they wanted was to talk with Wright, and Noll sprayed Plaintiff directly in his eyes several times while ordering him to go down to the floor. Plaintiff dropped to his knees, and Noll put him in a headlock with his knee in Plaintiff's back, slamming him to the ground. Plaintiff was dragged to his cell. He went to his sink to wash the spray out of his eyes but discovered his water had been turned off. He pressed the emergency call button to report the water issue and was told by CO Derrick Wilburn that Wright had ordered them to cut the water to the cells. Plaintiff banged on his door, asking for Noll. When Noll arrived, Plaintiff asked that his water be turned on because his eyes were burning badly. Noll refused to turn on the water and refused to let Plaintiff shower. He told Plaintiff he "wasn't doing anything for me because I disobeyed him and if I wanted to get the pepper spray out I should use my toilet." (Doc. 6, at 5).

The water was shut off for the next two days. Defendant Wright made rounds three days after the incident, and Plaintiff asked him why they were sprayed and being treated cruelly. Wright responded that "this is my jail and you all disobeyed me so this is what you get." (*Id.*). He also refused to let Plaintiff clean the premises to remove residual pepper spray, saying "we were lucky he let us take showers the day after the incident and to be happy with that." (*Id.*). Plaintiff was locked down for 25 days and was never allowed to be examined by a nurse. Plaintiff alleges that

he has permanent blurry spots in his field of vision and needs prescription glasses as a result of being sprayed.

In Count I, Plaintiff alleges Defendant Jesse Noll violated his Eighth Amendment right to be free from cruel and unusual punishment when he sprayed Plaintiff in the face with pepper spray. Plaintiff claims Noll used excessive force.

In Count II, Plaintiff alleges Defendant Travis Wright, Captain at ACJ, violated his Eighth Amendment rights by ordering that the water to Plaintiff's cell be cut off and refusing to allow him to shower or receive medical attention after being sprayed in the face with pepper spray.

## II.  Discussion

"Excessive force claims are cognizable under the Fourth, Fifth, Eighth, and Fourteenth Amendment, depending on where in the criminal justice system the plaintiff is at the time of the challenged use of force." *Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1169 (10th Cir. 2021) (citation omitted).  Claims of mistreatment while in state pretrial confinement are not covered by the Fourth Amendment or the Eighth Amendment.  *Colbruno v. Kessler*, 928 F.3d 1155, 1162 (10th Cir. 2019).  They are assessed under the Fourteenth Amendment.  *Id*.

The Supreme Court held in *Kingsley v. Hendrickson* that "the appropriate standard for a pretrial detainee's excessive[-]force claim is solely an objective one" and that therefore "a pretrial detainee can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose."  *Brown v. Flowers*, 974 F.3d 1178, 1182 (10th Cir. 2020) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 135 S. Ct. 2466, 2473–74, 192 L. Ed. 2d 416 (2015)); *see also Colbruno*, 928 F.3d at 1163 ("[T]here is no subjective element of an excessive-force claim brought by a pretrial detainee.").

There are three general areas in which courts have held that use of pepper spray or other chemical agents may constitute excessive force in violation of the Constitution.  First, an Eighth Amendment violation has been found when an officer used far more than a reasonable quantity of a chemical agent.  *See, e.g., Furnace v. Sullivan,* 705 F.3d 1021, 1025 (9th Cir. 2013) (finding Eighth Amendment violation where officer discharged can of pepper spray until empty, and other officer also joined in); *Lawrence v. Bowersox,* 297 F.3d 727, 732 (8th Cir. 2002) (same, where prisoner's entire cell was doused in pepper spray using fire-extinguisher-like device); *DeSpain v. Uphoff,* 264 F.3d 965, 978 (10th Cir. 2001) (same, where officer indiscriminately sprayed entire prison tier).

The Report provides that Plaintiff was sprayed two times with pepper spray during the incident.  The first time, he was sprayed by an officer with the Atchison Police Department who had been called to assist and who is not named as a defendant here.  (Doc. 10, at 5).  The second time, he was sprayed by Defendant Noll.  Noll states in an affidavit that Plaintiff continued to refuse to lockdown.  (Affidavit of Jesse Noll, Doc. 10-9, at 1-2).  He was covering his face with a towel or shirt and moving towards officers instead of complying with orders to return to his cell. (*Id.*).  According to Noll, he sprayed Plaintiff for "no more than one second, which depleted less than 10% of the pepper spray can." (*Id.*, at 2).  Based on the Report and Plaintiff's own description of events, the Court cannot find that Noll deployed far more than a reasonable quantity of pepper spray to achieve Plaintiff's compliance with the lockdown orders.

Constitutional violations have also been found when a chemical agent was used without a prior verbal command or warning, after a prisoner had been subdued, or after a prisoner had become compliant.  *See Tedder v. Johnson,* 527 F. App'x 269 (4th Cir. 2013) (stating that pepper spray employed on visibly sick inmate may constitute excessive force); *Johnson v. Blaukat,* 453

F.3d 1108 (8th Cir. 2006) (finding triable Eighth Amendment claim where officers allegedly used pepper spray as a first resort without prior verbal command); *Treats v. Morgan,* 308 F.3d 868, 872 (8th Cir. 2002) (finding triable Eighth Amendment claim where there was evidence that inmate "did not intentionally disobey [officer], use profanity or abusive language, or threaten any correctional officer, and ... was [pepper] sprayed without warning").

The Report provides that pepper spray was not used until Plaintiff and the other inmates refused the order to lockdown. (Doc. 10, at 4-6). Plaintiff's account is in agreement. Plaintiff had previously been sprayed and was continuing to resist returning to his cell when Defendant Noll sprayed him. (*Id*. at 6). By all accounts, this was not an instance where pepper spray was used as a first resort or without warning.

The third area where courts have found excessive force violations resulting from the use of pepper spray is where, after a prisoner is pepper sprayed, officers then do not allow the prisoner to wash off the spray or withhold appropriate medical attention. *See, e.g., Norton v. City of Marietta,* 432 F.3d 1145, 1153–54 (10th Cir. 2005) (finding triable Eighth Amendment claim where officer pepper sprayed inmate's eyes for 5–7 seconds from two inches away, as if "'he was spray-painting [plaintiff's] face,'" and then ignored inmate's pleas for assistance, other than "toss[ing] some water in his eyes"); *Walker v. Bowersox,* 526 F.3d 1186, 1189 (8th Cir. 2008) (finding prisoner stated claim for Eighth Amendment violation where prisoner was barred from showering or changing for three days after pepper spray incident); *Foulk v. Charrier,* 262 F.3d 687 (8th Cir. 2001) (affirming Eighth Amendment verdict against officer where, after officer "sprayed pepper spray directly into [inmate's] face," inmate "received no medical care and had no ability to wash off the pepper spray, [and] continued to feel its painful effects for several days").

Based on Plaintiff's allegations in the Amended Complaint, this was the area that concerned the Court the most. The Report, however, provides additional information. According to the Report, the water to C-Pod where Plaintiff was housed was turned off during the incident because inmates had been repeatedly flooding their cells in the previous days. The Report goes on to provide:

> After the inmates returned to their cells, Defendant Noll and ACSO's Wood turned the water back on in the cells. They also re-entered C-Pod to check on an inmate, D.P., who stated he was allergic to pepper spray. Thus, Wood took D.P. to the recreational room for further evaluation, where he was ultimately found to be ok. ACSO's Noll mopped up the pepper spray. . . . After the officers returned to the tower, they observed that an inmate, who they believed was J.B., flooded his room. After the water was cleaned up, inmate J.H. flooded the room again. The water was cleaned up once again. Water was turned on for limited use only for the remainder of the night. Every hour, Jail staff made hourly walkthroughs of C-Pod to check on the well-being of all of the inmates, which allowed inmates to voice any concerns or requests they had. Water was turned on during this time for inmates who needed water from the sink or who needed to flush the toilet. Dobbs never voiced, or in any way presented, any health concerns during any of the walkthroughs that night. Any such concern, had he raised it, would have been addressed. To prevent further incident once that the inmates were finally secured in their rooms, the inmates were not allowed general access to the shower until the following morning, when inmates, including Dobbs, were taken in groups to the shower, starting at 7:30 a.m. or 7:45 a.m.

Doc. 10, at 7-8 (internal citations omitted).

The Report does not indicate that water to his cell was continuously cutoff for two days, as Plaintiff alleges, and it supports Plaintiff's claim that he was allowed to shower the day after the incident. It does not appear that this was a situation where Plaintiff was denied all ability to wash off the pepper spray for an extended period of time.

As for Plaintiff's allegation that he was refused medical attention and suffered permanent damage to his vision as a result of the incident, the Report provides that Plaintiff made no requests for medical care immediately following the incident and refused to be seen by a medical provider approximately one month after the incident. The Report further provides that during a medical

evaluation on August 23, 2022, Plaintiff "indicated that he does not have, nor has he ever had, eye or vision problems."[1]  (Doc. 10, at 9).

In light of the *Martinez* Report and on further review of the Amended Complaint, the Court is considering dismissal of this matter for failure to state a claim on which relief can be granted. Plaintiff has failed to meet the objective standard for an excessive force claim.  Plaintiff will be given an opportunity to respond to the *Martinez* Report and to show good cause why dismissal should not be entered.  Failure to respond by the Court's deadline may result in dismissal of this action without further notice.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is granted until **February 17, 2023,** in which to respond to the *Martinez* Report and to show good cause why this action should not be dismissed for failure to state a claim.

**IT IS FURTHER ORDERED** that the officials responsible for the operation of the Atchison County Jail shall file a copy of Plaintiff's medical record dated August 23, 2022, (referenced on page 9 of Doc. 10) as an exhibit to the *Martinez* Report.

**IT IS SO ORDERED**.

**Dated January 18, 2023, in Kansas City, Kansas.**

**S/ John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**

---

[1] The Report does not include a copy of the referenced medical record.  The officials responsible for the operation of the ACJ are therefore ordered to file such record as an exhibit to the Report.